```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
EDGAR NERIS, on behalf of himself
And all other persons similarly
Situated,

                 Plaintiff,
                                          MEMORANDUM & ORDER
         -against-                        18-CV-1701(JS)(AKT)

R.J.D. CONSTRUCTION, INC., and
RICHARD J. DAILEY,

                 Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:      Peter Arcadio Romero, Esq.
                    Law Office of Peter A. Romero PLLC
                    490 Wheeler Road, Suite 250
                    Hauppauge, New York  11788

For Defendants:     James J. O'Rourke, Esq.
                    James J. O'Rourke & Associates, PLLC
                    235 Brooksite Drive
                    Hauppauge, New York  11788
```

SEYBERT, District Judge:

Plaintiff Edgar Neris ("Plaintiff") moves for an order enforcing a purported settlement agreement reached in this action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and New York Labor Law ("NYLL"), inter alia, (hereafter, the "Enforcement Motion").  (See ECF No. 38; see also Support Memo, ECF No. 38-1; Romero Decl., ECF No. 38-2.) Defendants R.J.D. Construction, Inc. ("Company"), and Richard J. Dailey ("Owner"; together with Company, the "Defendants") have not

Page **1** of **19**

responded to the Enforcement Motion. (See Case Docket, in toto.) For the reasons which follow, the Enforcement Motion is DENIED.

BACKGROUND

I. The Action, Generally

Plaintiff worked for Defendants, a construction company and its owner-operator, as a manual laborer. (See Compl., ECF No. 1, ¶¶9, 12-13). On March 19, 2018, he commenced this wages action; Plaintiff seeks (1) to recover unpaid wages alleging the Defendants failed to pay him for time worked in excess of 40 hours per week, and (2) damages for Defendants' failure to post required wages notices and provide wage statements. (See id. at ¶¶1-2.) On March 29, 2019, Magistrate Judge A. Kathleen Tomlinson issued a Memorandum and Order conditionally certifying this as an FLSA collective action. (See ECF No. 23.) Thereafter, Plaintiffs[1] Lauro E. Llivicura, Miguel Angel Romero Lopez, and Jorge Cabrera, hourly construction workers employed by the Defendants, opted-in to this action. (See ECF No. 32 (Llivicura's Consent Form (sealed)); ECF No. 27 Lopez's Consent Form (sealed)); ECF No. 34-1 (Cabrera's Consent Form); see also ECF No. 29 (Neris's Consent Form (sealed)).)

---

[1] Acknowledging that there are multiple plaintiffs in this action, for convenience, the Court continues to refer to "Plaintiff" in the singular.

II. <u>Participation in the EDNY Mediation Program and Settlement</u>

After engaging in significant discovery, on September 3, 2019, the parties requested that the case be referred to the Court's mediation program (<u>see</u> ECF No. 34), which Magistrate Judge Tomlinson ordered the same day (<u>see</u> ECF No. 35). Thereafter, on October 18, 2019, the parties engaged in mediation. (<u>See</u> Romeo Decl. ¶10.) Purportedly, the parties reached a settlement in principle, whereby Defendants would pay an aggregate of $105,000.00 to Plaintiff (hereafter, the "Settlement Sum") in exchange for Plaintiff's agreement to execute a <u>Cheeks</u>-compliant wage and hour release (hereafter, the "Oral Settlement"). (<u>See id.</u> ¶11.) The Settlement Sum was to be paid in equal monthly installs over a 48-month period (hereafter, the "Payoff Period"); in the event of a default, Defendants would execute separate confessions of judgment. (<u>See id.</u>) Further, if, during the Payoff Period, Owner sold a certain investment property, <u>i.e.</u>, the "Dailey Property",[2] Defendants would make an accelerated $52,500 payment towards the Settlement Sum. (<u>See id.</u>)

On November 6, 2019, in seeking an adjournment of a scheduled conference before Magistrate Judge Tomlinson, Plaintiff reported the parties' Oral Settlement to the Court (hereafter, the

---

[2] The "Dailey Property" is defined in the Proposed Settlement Agreement. (<u>See</u> Proposed Settlement Agreement, defined <u>infra</u>, §5.)

"November 2019 Report").  (See ECF No. 36.)  That same day, the Court's Alternative Dispute Resolution Office noted the parties' settlement on the docket.  (See Case Docket, Nov. 6, 2019 Report of Mediation (Settled)); see also Romeo Decl. ¶10.).  On November 7, 2019, Judge Tomlinson entered an order, inter alia, directing the parties "to mail their settlement agreement and motion seeking approval of the settlement agreement pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 200 (2d Cir. 2015) to the Court within 30 days."  (Nov. 7, 2019 AKT Elec. ORDER (hereafter, the "Cheeks Order").)  While the parties failed to comply with the Cheeks Order, neither did they challenge it.  Eight months later, on June 23, 2020, Plaintiff advised the Court that (1) Defendants refused to consummate the Oral Settlement, and (2) Plaintiff intended to move to enforce it.³  (See Status Ltr., ECF No. 37.)

III. Alleged Further Negotiation Discussions⁴

On January 3, 2020, Plaintiff's counsel, Peter A. Romero, Esq. ("Romero"), sent Defendants' counsel, James J.

---

³  Because Plaintiff intended to engage in motion practice, he requested that the case be reassigned, as the presiding judge, Honorable Arthur D. Spatt, had passed away.  (See Status Ltr., ECF No. 37.)  On June 30, 2020, the undersigned was reassigned this case.

⁴  This subsection is based upon the Romero Declaration (ECF No. 38-2), submitted in support of the Enforcement Motion, to which Defendants have not responded.  For purposes of ruling upon the Enforcement Motion only, the Court assumes Romero's averments in his Declaration to be true, unless otherwise contradicted by record evidence.

O'Rourke, Es.q ("O'Rourke"), a proposed settlement agreement with related documents. (Romero Decl. ¶12.) "For more than a month, Defendants did not request any changes to the agreement or dispute any of the terms of the proposed settlement agreement." (Id.) It was not until February 12, 2020, when O'Rourke phoned Romero, that the Defendants sought to "renegotiate material terms" relating to the payment of the Settlement Sum, i.e., "Defendants would not be required to make any payments whatsoever unless, and until, [Owner] sold the [Dailey] Property." (Id. ¶¶12, 13.) On February 13, 2020, Plaintiff rejected that proposal. (See id. ¶14.) Four months later, via a June 18, 2020 email, Plaintiff reiterated that he "could not accept Defendants' requested material modifications to the payment terms as the sale of the [Dailey] Property was speculative and would render [Defendants'] promise to pay inchoate and illusory." (Id. ¶15.) In their June 19, 2020 response, Defendants stated they could not consent to the Proposed Settlement Agreement. (See id.; see also June 19, 2020 O'Rourke Email, ECF No. 38-8.)

IV. The Enforcement Motion

More than six months later, on January 21, 2021, Plaintiff filed the instant Enforcement Motion. In support of the Motion, in addition to Romero's Declaration, Plaintiff submitted various exhibits, to wit:

(1) A proposed settlement agreement (hereafter, the "Proposed Settlement Agreement"), including exhibits of: a structured payment schedule (Ex. A); a proposed stipulation of dismissal (Ex. B); a proposed confession of judgment for the Company (Ex. C); and, a proposed confession of judgment for the Owner (Ex. D) (hereafter, collectively, the "Settlement Packet") (see ECF No. 38-3);

(2) A January 3, 2020 cover email from Romero to O'Rourke, attaching the Settlement Packet (see ECF No. 38-4);

(3) A January 6, 2020 cover email from Romero to O'Rourke, attaching the Owner's proposed confession of judgment (see ECF No. 38-5);

(4) A February 12, 2020 email from Romero to O'Rourke seeking confirmation on various items regarding the "Dailey Property" (see ECF No. 38-6);

(5) A February 13, 2020 cover email from Romero to O'Rourke indicating Plaintiff's preference for monthly installment payments and requesting approval of the Settlement Packet, attached (see ECF No. 38-7); and

(6) A June 18 to 19, 2020 email exchange between Romero and O'Rourke, with (a) Romero rejecting the notion that payment of the Settlement Sum be contingent upon the sale of the "Dailey Property" instead of the originally agreed-upon

installment payments; and (b) O'Rourke refusing to consent to installment payments (see ECF No. 38-8).

## DISCUSSION

I. The Legal Standard

"A settlement agreement is a contract that is interpreted according to general principles of contract law." Powell v Omnicom, 497 F.3d 124, 128 (2d Cir. 2007); see also Tromp v. City of N.Y., 465 F. App'x 50, 51 (2d Cir. 2012) ("It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law."). "A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." Mtgs & Exp'tns Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974). "Such power 'is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceeding.'" Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437 444 (2d Cir. 2005) (quoting Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986)). Moreover, "[t]he settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007); see also United States v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice

merely because her assessment of the consequences was incorrect."). Thus, there is "[a] presumption in favor of enforcement reflect[ing] the value that courts place on negotiated settlements." Rahman v. Kaplan Cornelia, Inc., Case No. 12-CV-9095, 2014 WL 541851, at *4 (S.D.N.Y. Feb. 11, 2014) (citing Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside.")).

"Mutual assent of the parties to the terms of a settlement is the essential component of a settlement agreement." Rahman, 2014 WL 541851, at *4 (citing Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004)). Although "a written document is the most traditional evidence of mutual assent, parties may enter and be bound by an agreement without signing a fully executed contract." Id. (citing Winston v. Mediafare Entm't Corp., 777 F.2d 78 (2d Cir. 1986); further citation omitted). Further, "[u]nder New York law,[5] parties are free to bind themselves orally, and the fact that they contemplate later memorializing

---

[5] "Although '[t]he Second Circuit has declined to rule whether courts should apply federal or state law in determining the enforceability of settlement agreements . . . , the Circuit has stated that New York and federal law on enforcing settlements are 'materially indistinguishable.'" Junjiang Ji v. Jling Inc., No. 15-CV-4194, 2019 WL 1441130, at *7 n.1 (E.D.N.Y. Mar. 31, 2019) (quoting Velazquez v. Yoh Servs., LLC, No. 17-CV-842, 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017); citation omitted).

their agreement in an executed document will not prevent them from being bound by the oral agreement." Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997).  In determining whether parties "who orally agree to settle [a] matter but fail to fully execute documents to that end, intend to be bound by th[eir] oral representations," "[c]ourts in this Circuit apply a four-pronged balancing test." Nieves v. Cmty. Choice Health Plan of Westchester, Inc., No. 08-CV-0321, 2011 WL 5533328, at *3 (S.D.N.Y. Aug. 31, 2011) (quoting Wesley v. Corr. Officer Badge # 9417, No. 05-CV-5912, 2008 WL 41129, at *2 (S.D.N.Y. Jan.2, 2008); internal quotation marks omitted).  Specifically, a court must consider:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Winston, 777 F.2d at 80.  These are known as the Winston factors. See,e.g., Acun v. Merrill Lynch Pierce Fenner & Smith, Inc., 852 F. App'x 552, 554 (2d Cir. Mar. 23, 2021) (summary order) (identifying the four Winston factors as factors courts must consider when determining whether parties intend to be bound by an oral contract).  While "[n]o single factor is decisive," Ciaramella, 131 F.3d at 323, where "there is a writing between the parties showing that [one party] did not intend to be bound . . .

a court 'need look no further than the first factor.'" Kaczmarcysk v. Dutton, 414 F. App'x 354, 355 (2d Cir. Dec. 22, 2011) (summary order) (quoting RKG Holdings, Inc. v. Simon, 182 F.3d 901, 901 (2d Cir. 1999); further citation omitted); see also Acun, 852 F. App'x at 554 (stating the first Winston factor "is frequently the most important" (cleaned up)).  Finally, the "party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement."  Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc., 447 F. Supp.2d 329, 335 (S.D.N.Y. 2006).

II. Analysis

In applying the requisite Winston factors to the present record, the Court finds Plaintiff cannot carry his burden of proof that the parties intended to be bound by the Oral Settlement.

A. The First *Winston* Factor: Express Reservation of Right

While there is no evidence that either party expressly reserved a right not to be bound in the absence of a writing, under the facts of this case, the first Winston factor weighs slightly in favor of non-enforcement.  First, when Romero reported the parties' Oral Settlement, he stated: "We write on behalf of all parties to inform the Court that the parties have reached a settlement in principle and are in the process of drafting settlement documents."  (ECF No. 36 (emphasis added).)  At a

minimum, this implies that the parties intended their agreement to be reduced writing, which is not surprising given this is an FLSA action, and dismissal of such an action -- which was contemplated here, if the settlement was approved -- requires court approval. See, e.g., Bazile v. Asset Prot. Grp., LLC, No. 18-CV-6820, 2019 WL 7985168, at *2 (E.D.N.Y. Nov. 27, 2019) ("As a result of Cheeks, district courts are required to review and approve the terms on which parties agree to dismiss a FLSA action . . . ." (citation omitted)), report and recommendation adopted by Elec. Order (E.D.N.Y. Mar. 5, 2020). Second, review of the Proposed Settlement Agreement demonstrates the parties intended to be bound by a written agreement given the inclusion of the following provision:

> 12. **Sole and Entire Agreement:** This Agreement sets forth the entire agreement between the parties in this matter and fully supersedes any and all prior agreements or understandings pertaining to this matter whether oral or written which may have existed between the parties. There are no representations, warranties, understandings or agreements other than those expressly set forth in this Agreement.

(Proposed Settlement Agreement § 12.) As the Second Circuit has stated, "the presence of a merger clause 'is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement.'" Kaczmarcysk, 414 F. App'x at 355 (quoting Ciaramella, 131 F.3d at 324).

Moreover, the Court finds Plaintiff's reliance upon Rivera v. Crabby Shack, LLC, No. 17-CV-4738, 2019 WL 8631861 (E.D.N.Y. May 2, 2019), in support of the first Winston factor is unpersuasive. Contrary to the present case, in Rivera, "at the close of the mediation session, the parties executed a handwritten document . . . [which] set[]out nine agreed-upon terms [hereafter, the "Term Sheet")]." Id. at *1. After the listed terms, the Term Sheet included a statement that the parties had reached a settlement after mediation and upon the listed terms, which was "AGREED TO" and signed by the parties' attorneys. Id. When the parties were unable to agree upon the contemplated formal settlement agreement, the defendant moved, inter alia, to enforce the settlement relying upon the Term Sheet. See id. The court granted the motion, relying upon the Term Sheet as an objective indication of the parties' intention to be bound by the agreement reached at the mediation. See id. at 1-2. The fact scenario of this case is not the same. Rather, here, there has been no proffer of an agreed-upon term sheet or other objective indicia of intent to be bound by the terms of the parties' Oral Settlement. Moreover, the Proposed Settlement Agreement includes a merger clause, thereby evincing the parties' intent not to be bound absent execution of that written agreement. As such, the first Winston

factor tips slightly against enforcing the parties' Oral Settlement.[6]

B. The Second *Winston* Factor: Partial Performance

"[P]artial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts the performance signals, by that act, that it also understands a contract to be in effect." R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 75-76 (2d Cir. 1984). Relying upon Jackson v. N.Y.C. Department of Education, No. 10-CV-9193, 2012 WL 1986593 (S.D.N.Y. June 4, 2012), Plaintiff contends that by reporting that this case had settled in principal and then, approximately eight months later, by delivering a draft of the Proposed Settlement Agreement to Defendants, there has been partial performance of the parties' Oral Settlement. The Court disagrees.

The facts of Jackson are readily distinguishable from the present one. In Jackson, approximately five weeks before trial, the district judge referred the case to the magistrate judge for a settlement conference. See 2012 WL 1986593, at *1. At the conclusion of the conference, defendants offered plaintiff a settlement sum; the terms of the proposed agreement were relatively straightforward, with each defendant offering to make a single

---

[6] Even if the Court were to find that the first Winston factor was neutral, as discussed infra, the cumulative effect of the remaining Winston factors weighs in favor of finding the parties' Oral Settlement unenforceable.

Page **13** of **19**

payment in exchange for plaintiff withdrawing her case and executing general releases of claims. See id. The next day, plaintiff's counsel emailed defense counsel stating: (1) plaintiff accepted the offered settlement sum; (2) defense counsel would draft the settlement agreement; and (3) plaintiff's counsel would contact chambers to inform the district judge that the parties had reached a settlement. See id. Thereafter, plaintiff reported the settlement to the court, and the court marked the trial off its calendar. See id. Within the next month, a draft settlement document was prepared, exchanged, revised, approved, and finalized. See id. However, before the agreement could be executed, plaintiff terminated her settlement counsel and retained new counsel, who filed a notice of appearance and a letter indicating that the case was not settled. See id. at *2. Defendants moved to enforce the parties' settlement, which the court granted. See id. As to the second Winston factor, the court found there was partial performance of the parties' contract since both reporting the settlement to the court and drafting of the agreement had occurred. See id. Presumably,[7] the court reached this conclusion because, in accordance with plaintiff's email accepting the defendants' offer, plaintiff also outlined other actions that would be taken by the parties, i.e, the reporting of

---

[7] The court did not explain its rationale for reaching this conclusion. See id.

the settlement and the drafting of the settlement agreement, which had occurred.

In contrast, here, there is no evidence of a similar agreement regarding the division of tasks. "One party's drafting of a written agreement does not constitute partial performance where the parties did not agree that one of them was responsible for drafting such document." Can't Stop Prods., Inc. v. Sixuvus, Ltd., No. 17-CV-6513, 2019 WL 5773739, at *5 (S.D.N.Y. Jan. 18, 2019); see also Johnson v. Fordham Univ., No. 11-CV-4670, 2016 WL 450424, at *4 (S.D.N.Y. Feb. 4, 2016) ("Because the parties did not agree on all material terms and there was no provision of the oral agreement by which one party was obligated to draft an agreement . . . the drafting of the settlement agreement did not constitute partial performance"). Hence, the Court finds there has been no partial performance of a contract. This conclusion is buttressed by the fact that there have been no payments made to Plaintiff. See, e.g., Sulaymu-Bey v. City of N.Y., No. 17-CV-3563, 2020 WL 6709548, at *4 (E.D.N.Y. Oct. 13, 2020) ("There is no other evidence before the Court of partial performance by either side: Plaintiffs have not sought to dismiss their claims . . . and Defendants have not made any settlement payments"). Therefore, consideration of the second Winston factor weighs against enforcement of the Oral Settlement.

C. The Third *Winston* Factor:  Agreed Terms

"The third [*Winston*] factor requires the Court to consider 'whether there was literally nothing left to negotiate.'" Scalia v. Agave Elmwood Inc., 458 F. Supp. 3d 161, 170 (W.D.N.Y. 2020) (quoting *Winston*, 777 F.2d at 82 (cleaned up)).  Indeed, "even 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing."  *Powell*, 497 F.3d at 130 (citation omitted).  But, such changes "are relevant . . . only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect."  *Id.*

Here, there are two indications that the parties had not finalized their negotiations.  *First*, Romero avers that as part of their settlement, the parties agreed to an accelerated payment of the Settlement Sum in the amount of $52,500 if the Dailey Property sold.  (*See* Romero Decl. ¶11.)  However, in the Proposed Settlement Agreement, the accelerated payment amount is shown as $75,000. (*See* Proposed Settlement Agreement § 5 ("Defendant Dailey agrees that in the event of the sale of the Dailey Property, Defendant Dailey agrees to accelerate the payment schedule for the Settlement Sum and remit payment of Seventy-Five Thousand Dollars and Zero Cents ($75,000.00) to Plaintiffs and Plaintiffs' counsel within

thirty (30) days of the closing date for the sale of the Dailey Property (hereinafter the "Accelerated Payment").)  The difference between these amounts is significant, does not appear to be a typographical error, and raises a strong inference that the accelerated payment amount was not a settled term.

Second, in an email exchange among counsel, Romero wrote:

> [W]e want to confirm a few items below. Please confirm:
> - we will need to verify the extent to which the property is encumbered--Dailey will pay the cost of the title search;
> - <u>the agreement will include</u> that Dailey agrees to accept any offer within 95% of the appraised value;
> - if the property is not sold within 12 months and settlement remains unpaid, the confessions of judgment may be filed at that time;
> - the lien will be structured as a Note and Mortgage.

(Feb. 12, 2020 Email from Romero to O'Rourke, ECF No. 38-6 (emphasis added).)  The context of this email highlights that "points remain[ed] to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect." Powell, 497 F.3d at 130.  This is especially so as this component of the agreement involved Owner's property rights, including a potential additional encumbrance upon the Dailey Property.  Yet, there is no record evidence that either a promissory note or mortgage were drafted.

Nor are these additional, material terms included in the Proposed Settlement Agreement, notwithstanding Plaintiff's stated desire to have them reflected therein.  Thus, it is apparent that the parties had not yet agreed upon the acceleration payment provision, a material term of their purported agreement.  Hence, the third Winston factor weighs against enforcing the parties' Oral Settlement.

D. The Fourth *Winston* Factor:  Typically Committed to Writing

"[T]he fourth factor weighs heavily against enforcement because agreements to settle FLSA claims are virtually always memorialized in writing."  Junjiang Ji, 2019 WL 1441130, at *12 (citing Cheeks, 796 F.3d at 200; further citation omitted); see also Scalia, 458 F. Supp. 3d at 170 ("Agreements to settle FLSA claims are typically committed to writing.") (collecting cases); Rivera, 2019 WL 8631861, at *2 ("agreements to settle FLSA cases are typically reduced to writing"); Velazquez, 2017 WL 4404470, at *3 ("[S]ettlements of . . . FLSA claims are of the type typically committed to writing, because they require judicial approval."); Alvarado v. Five Town Car Wash, Inc., No. 13-CV-1672, 2014 WL 252015, at *2 (E.D.N.Y. Jan. 22, 2014) ("[W]ritten agreements are the norm when parties seek to settle claims under the FLSA").

Here, "[i]n light of the Cheeks requirement that . . . the Court . . . approve any final settlement agreement," Junjiang Ji, 2019 WL 1441130, at *12, and the parties' November 2019 Report

communicating to the Court that they "are in the process of drafting settlement documents" (ECF No. 36), "all parties . . . necessarily contemplated that a written agreement would be drafted, executed and approved by the Court." Junjiang Ji, 2019 WL 1441130, at *12.  To contend otherwise is disingenuous.  Thus, consideration of the fourth Winston factor weighs heavily in favor of not enforcing the parties' Oral Settlement.

***

In sum, having considered the four Winston factors, the Court finds the cumulative weight of those factors soundly tips against enforcement of the Oral Settlement.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the Enforcement Motion (ECF No. 38) is **DENIED**;

**IT IS FURTHER ORDERED** that by October 30, 2021, Plaintiff's counsel is to file a Status Report informing the Court how he intends to proceed with this action.

**SO ORDERED.**

/s/ JOANNA SEYBERT
JOANNA SEYBERT, U.S.D.J.

Dated:   September __28__, 2021
         Central Islip, New York